# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-08-00662-CR

**Frank Earl Evans, Appellant**

**v.**

**The State of Texas, Appellee**

**FROM THE DISTRICT COURT OF MILAM COUNTY, 20TH JUDICIAL DISTRICT
NO. CR22104, HONORABLE ED MAGRE, JUDGE PRESIDING**

## M E M O R A N D U M   O P I N I O N

A jury found appellant Frank Earl Evans guilty of possessing more than four but less than two hundred grams of cocaine with intent to deliver, for which the court assessed punishment at forty years in prison. *See* Tex. Health & Safety Code Ann. § 481.112(a), (d) (West Supp. 2009). In two points of error, appellant contends that the evidence is legally and factually insufficient to support the guilty verdict. We find the evidence sufficient and affirm the conviction.

This prosecution arises out of a residence search conducted by members of the Central Texas Narcotics Task Force in Cameron. The following summary of the evidence is taken from the testimony of officers involved in the search and the investigation leading up to it. The defense called no witnesses.

The search was the culmination of a six-month investigation of drug dealing in Cameron. During this investigation, a confidential informer made several controlled cocaine buys

from Julian Vargas, a Cameron resident. On at least two of these occasions, Vargas told the informer that he would have to obtain the cocaine from appellant. On these occasions, appellant was seen arriving at the scene of the transaction in a black Cadillac Escalade, although he was not seen making a delivery. The Escalade was registered to Whitney Graham, who was known to live with appellant at 2205 Gillis Street in Cameron. Based on the information gathered during the investigation, a search warrant was issued to search the Gillis Street house.

The warrant was executed on the afternoon of January 18, 2008. After knocking and announcing their presence, the officers forced open the front door of the house. Their entry was delayed by a bar wedged between the door knob and the floor (a similar bar was later found on the back door). Upon entering, the officers found appellant standing in the doorway of the master bedroom. Graham, apparently naked or nearly so, was in the bed. Two children of preschool age were also present in the house. Appellant was ordered to lie face-down on the floor. When he refused to comply with the order, he was forced to the floor.

The water was running in the kitchen sink when the officers entered. The toilet in the master bathroom, which was next to the master bedroom, was also refilling as if it had just been flushed. The toilet was pulled from the floor, and two plastic bags fell from the trap. One bag contained 3.6 grams of marihuana, and the other contained white pills that are not identified in the record. A third bag, this one containing 9.04 grams of crack cocaine, was also removed from the trap. A fourth bag could be seen in the trap but could not be removed, so the officers took the toilet outside and broke it. The fourth bag contained 19.6 grams of powder cocaine. Later that day, the sewer line from the house was uncovered and two more plastic bags were found inside the line.

One of these bags contained 2.5 grams of powder cocaine and the other contained a white powder residue. There was testimony that the amount of cocaine and crack cocaine seized during the search was indicative of drug dealing and not mere use, and that it had a street value of more than $2000.

In the kitchen, officers found a microwave oven with a white residue inside it. Beside the microwave oven was a shopping bag containing scales, baking soda, coffee cups, and a spoon. The scales field tested positive for cocaine. There was testimony that powder cocaine is often combined with water and baking soda and then heated in a microwave oven to produce crack cocaine. Powder baby formula and plastic sandwich bags were also found in the kitchen. There was testimony that baby formula is sometimes used to cut powder cocaine prior to sale. The children found in the residence were not infants and were not likely to drink formula.

Neither weapons nor cash were found in the house. A computer was seized by the officers, but its hard drive does not appear to have been analyzed. The officers found no written records of drug transactions. The utilities at the Gillis Street house were in Graham's name, and no documents linking appellant to the house were found during the search. The bedroom closet contained both men's and women's clothing.

When there is a challenge to the sufficiency of the evidence to sustain a criminal conviction, the question presented is whether a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 324 (1979); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007); *Johnson v. State*, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000). In a legal sufficiency review, all the evidence is reviewed in the light most favorable to the verdict; it is assumed that the trier of fact resolved conflicts in the testimony,

3

weighed the evidence, and drew reasonable inferences in a manner that supports the verdict. *Clayton*, 234 S.W.3d at 778.

Appellant's legal sufficiency argument emphasizes evidence that was not found and facts that were not proved. This argument, which focuses on the alleged weaknesses of the State's evidence, is more properly considered in the context of the factual sufficiency point. In determining whether the evidence is legally sufficient, we look at what the State did prove and determine whether this evidence, viewed in the light most favorable to the verdict, is sufficient to support a finding of guilt beyond a reasonable doubt.

Contrary to appellant's contention, the finding of guilt does not rest solely on his mere presence in the house where the cocaine was found. A Cameron police officer testified without contradiction that appellant was known to live in the Gillis Street house with Graham, and this testimony was partially confirmed by the discovery of men's clothing in the bedroom. The toilet was refilling as the officers entered and, of the two adults present in the house, appellant was the one closest to the bathroom and apparently the only one wearing clothes. Appellant did not comply with the instruction to lie on the floor, and he had to be forced to do so. From this evidence, the jury could reasonably infer that appellant flushed the contraband found in the trap and the sewer line after the police announced their presence. Viewing the evidence in the light most favorable to the verdict, the jury could find beyond a reasonable doubt that appellant knowingly exercised actual care, custody, control, or management of the cocaine, either alone or jointly with Graham. *See* Tex. Health & Safety Code Ann. § 481.002(38) (West Supp. 2009) (defining "possession").

4

Members of the drug task force also testified without contradiction that appellant was identified as the source of cocaine purchased during two controlled buys and that appellant was seen at those transactions. The evidence found in the kitchen—the scales with cocaine residue, the microwave oven with powder residue, the baking soda, the infant formula—supports an inference that powder and crack cocaine were being prepared for sale. This inference is supported by the testimony of an experienced police officer that the amount of cocaine found at the house was indicative of possession for sale rather than for personal use. Viewing the evidence in the light most favorable to the verdict, the jury could find beyond a reasonable doubt that appellant possessed the cocaine with intent to deliver. Point of error one is overruled.

In a factual sufficiency review, all the evidence is considered equally, including the testimony of defense witnesses and the existence of alternative hypotheses. *Clewis v. State*, 922 S.W.2d 126, 129 (Tex. Crim. App. 1996); *Orona v. State*, 836 S.W.2d 319, 321 (Tex. App.—Austin 1992, no pet.). Although due deference still must be accorded the fact finder's determinations, particularly those concerning the weight and credibility of the evidence, the reviewing court may disagree with the result in order to prevent a manifest injustice. *Johnson*, 23 S.W.3d at 9; *Cain v. State*, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997). The evidence will be deemed factually insufficient if the evidence supporting the verdict is so weak as to make the finding of guilt clearly wrong or manifestly unjust, or if the verdict is against the great weight and preponderance of the available evidence. *Watson v. State*, 204 S.W.3d 404, 414-15 (Tex. Crim. App. 2006); *Johnson*, 23 S.W.3d at 11.

Appellant stresses what he perceives to be the holes in the State's case. Appellant correctly points out that he was not seen flushing the toilet, did not appear to be intoxicated, did not flee, and had no contraband on his person. The house did not have any odor associated with the possession or use of a controlled substance. No documents were found in the house indicating that appellant lived there. Neither cash nor records of drug transactions were discovered. Appellant was never seen actually delivering a controlled substance and there was no evidence regarding how long the bags containing the contraband had been in the toilet. Appellant suggests that Graham could have hidden the drugs in the toilet without his knowledge, and that he was nothing more than "a poor man in a house having a sexual rendevous" when the police arrived.

Appellant's alternative hypothesis is possible, but improbable. A person is not likely to hide $2000 worth of cocaine in the trap of a toilet with nothing to prevent it being permanently lost with the next flush. The most likely explanation for the discovery of the cocaine in the toilet is that it was flushed in haste to prevent its discovery by the police and, under the circumstances shown by this record, the most likely person to have flushed the cocaine was appellant. The possibility that the cocaine was possessed for personal use only is also unlikely. The quantity of cocaine discovered by the police strongly suggests that it was being held for sale, as does the sales-related paraphernalia found in the kitchen. This conclusion is supported by the testimony linking appellant to controlled cocaine deliveries in Cameron during the months preceding the search. The State's evidence is not so weak, and the contrary evidence and alternative hypotheses are not so strong, as to render the jury's verdict clearly wrong or manifestly unjust. Point of error two is overruled.

6

The judgment of conviction is affirmed.

_____

Jan P. Patterson, Justice

Before Justices Patterson, Puryear and Pemberton

Affirmed

Filed:   April 6, 2010

Do Not Publish

7